IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUL 2 0 2000

*Robert M March*
CLERK

VICTORIA L. RUTLEDGE,

    Plaintiff,

vs.

    No. Civ. 99-1109 BB/RLP

KENNETH S. APFEL,
Commissioner of Social Security,

    Defendant.

### MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

1.   This matter comes before the Court on the Motion of Victoria L. Rutledge ("Plaintiff") to Reverse the decision of the Commissioner of Social Security denying her application for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff seeks an Order remanding this matter to the Commissioner with directions to award benefits, or in the alternative, an Order remanding with instructions to conduct additional proceedings.

**I.**   **Administrative History**

2.   Plaintiff applied for DIB and SSI on July 18, 1996, alleging a date of onset of disability of March 20, 1995. (Tr.97-99, 208-210). Her claim was denied initially and on reconsideration. (Tr.70, 211, 78, 72, 212, 84). Plaintiff appeared at a hearing before an administrative law judge (ALJ) on August 5, 1997. (Tr. 23). In a decision dated December 15, 1997, the ALJ found that Plaintiff was not disabled, and could perform her past relevant work as a statement clerk. (Tr. 17). The Appeals Council declined to review Plaintiff's claim on July 30, 1999. (Tr. 5-6).

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.



## II. Standard of Review

3. The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed,[2] and (2) if the decision is supported by substantial evidence.[3] See 42 U.S.C. § 405(b); Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988); Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988). In this review, this court must "meticulously examine the record and review it in its entirety." Id.

## III. Vocational & Medical Facts

4. Plaintiff was born on December 8, 1958. (Tr.97). She is a high school graduate who has completed two years of college courses. (Tr. 110). She has previously been employed as radiology assistant and as a banking statement clerk. (Tr. 33, 63, 106, 110).

5. Plaintiff underwent discectomy for a herniated disc at L5-S1 in the early 1990s. (Tr. 129, 135, 150). She began seeking medical treatment for back pain in April 1995. (Tr. 130). She was evaluated by Thomas G. Cohn, M.D., a specialist in physical medicine and rehabilitation, on January 5, 1996. (Tr.150-153). On examination, Plaintiff had radicular pain symptoms, muscles spasm, good range of motion, normal tone and strength, 1+/4 symmetric reflexes, no isolated muscle weakness and intact sensation, except for the lateral aspect of her right foot. Dr. Cohn stated that

---

[2] The Commissioner's decision will be reversed when he uses the wrong legal standards or fails to clearly demonstrate reliance on the correct legal standards. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).

[3] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Castellano v. Secretary of H.H.S., 26 F.3d 1027, 1028 (10th Cir. 1994). "The finding of the (Commissioner) as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Substantial evidence is more than a scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). Evidence is not substantial if it is overwhelmed by other evidence of record. Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988). In determining whether substantial evidence exists, the Court does not review the issues *de novo*, Sisco v. Dept. of H.H.S., 10 F.3d 739, 741 (10th Cir. 1993), reweigh the evidence or substitute its judgment for that of the Commissioner. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court's review will, however, involve a meticulous examination of the entire record. Williams, 844 F.2d at 750.

Plaintiff's low back pain and radicular symptoms were probably due to irritation of the nerves in the low back. Because she retained relatively good range of motion, he felt that she did not have a severe herniated disc or severe nerve injury, and recommended conservative treatment to address her pain complaints.

6. Ten days later, Plaintiff continued to complain of back pain, and of problems with her leg giving out. (Tr. 148-149). On examination, Dr. Cohn noted acute radiculopathy, good strength of the lower extremities, 1+/4 reflexes and sensory loss in the medial aspect of the first digits of her right foot. Additional reflex and conduction abnormalities were noted on EMG of the right leg. Dr. Cohn recommended a selective nerve root block, which was performed on January 17, 1996. (Tr. 142-144).

7. Dr. Cohn next examined Plaintiff on February 7, 1996 (Tr. 141), at which time she reported improvement in the radicular components of her back pain, and less severe pain overall. On examination, she demonstrated good reflexes, strength and sensation of her lower extremities. Dr. Cohn recommended a back strengthening program, as well as additional evaluation to determine whether such strengthening would reduce symptoms she experienced from L5-S1 facet arthropathy. If additional strengthening could not be achieved, he felt that she would probably require facet block in order to tolerate activity. Although there is no record on any additional evaluation by Dr. Cohn, he continued to prescribe a muscle relaxant, Soma Compound (Carisoprodol), for Plaintiff. (Tr. 162, 161, 157).

8. Plaintiff was evaluated at St. Joseph Rehabilitation Hospital on March 21, 1996. (Tr. 139-140). The second page of the report, which presumably contains most of the therapist's findings on physical examination, is missing. The portion of the physical examination which is contained in

the administrative record records limited range of motion of the lumbar spine and normal range of motion of the hip flexors, with increasing pain on testing of the right leg.

9. In addition to her orthopedic problems, Plaintiff has been an insulin dependent diabetic since age 17. (Tr. 59, 130). She was evaluated by Robert Galagan, M.D., an internist specializing in endocrinology, on February 19, 1996. (Tr. 135-136). She advised him that she had experienced severe thirst and frequent urination since undergoing nerve block one month earlier, and that her fasting blood sugar before the injection was 268.[4] She also complained of chronic right lower back pain with radicular symptoms across her buttock and down her leg, numbness of her right fifth toe, mild depression with mild insomnia and dry skin. Physical examination was significant for the following:

| | |
|---|---|
| Eyes: | Ocular muscles intact. No cataracts. Fundoscopic exam revealed very few microaneurysms and dot hemorrhages in each retina. |
| Back: | Normal spinal posture. Mild lumbar tenderness. |
| Extremities: | No edema. Normal peripheral pulses. Feet cold. Normal knee reflexes. Absent ankle reflexes. Normal fine touch sensation of toes. |

Dr. Galagan diagnosed chronic back pain caused by degenerative disc disease of the L-S spine, insulin requiring diabetes with unstable control, mild diabetic background retinopathy and mild diabetic peripheral neuropathy. He ordered laboratory testing[5] and prescribed a blood sugar monitor, and asked her to return two weeks later for follow up and adjustment of her insulin medication.

10. Plaintiff returned to Dr. Galagan on March 4, 1996. (Tr. 134). She had not obtained a blood

---

[4] The normal range for fasting blood sugar in an adult ins <115. The Merck Manual, 17th Ed., 1999, p. 170.

[5] Results of blood tests on 2/19/96: glycohemoglobin - 13.1%; fasting glucose - 148. (Tr. 134).

4

sugar monitor, so he was not able to adjust her insulin dose. He continued her on the same insulin dosage, pending appropriate monitoring. There are no further records from Dr. Galagan.

11. H. John Erickson, M.D., a board certified orthopedic surgeon, performed a consultative examination on Plaintiff on January 6, 1997. (Tr. 173-176, 199). Plaintiff advised Dr. Erickson that she had not seen a physician for control of her diabetes, and that her blood sugar was running in the 300 range, despite twice daily shots of insulin. She also complained of back and leg pain, which prevented her from sitting, standing or laying down for prolonged periods, and sometimes prevented her from walking. On physical examination, Plaintiff good strength in her quadriceps muscles, decreased sensation over the lateral aspect of her right foot, fair circulation to her lower extremities, and a positive Patrick's test[6]. Dr. Erickson also found that Plaintiff did not have true radicular pain on straight leg raising test (supine SLR: negative at 80 degrees). In terms of her orthopedic condition, Dr. Erickson concluded that Plaintiff had degenerative joint disease of the sacroiliac joint and facet type syndrome, and was therefore a poor candidate for heavy manual labor.[7]

12. Cheryl Hollingsworth, M.D., a board certified psychiatrist and neurologist, performed a consultative psychiatric evaluation on February 4, 1997. (Tr. 177-180, 200). Plaintiff complained of some depression and difficulty sleeping because of back problems. She also stated that she was working with the Department of Vocational Rehabilitation, had studied computers, and was looking forward to starting a home business. In addition to She advised Dr. Hollingsworth that in addition to insulin, she took Soma Compound in the evenings for back pain and BuSpar for premenstral

---

[6] A positive Patrick's test is indicative of arthritis of the hip. Dorland's Illustrated Medical Dictionary, 28th Ed., 1994, p. 246).

[7] A portion of Dr. Erickson's report, documenting lumbar range of motion, is missing from the administrative record. It was apparently presented to the ALJ, however, who stated that it indicated limited lumbar range of motion. (Tr. 15).

5

syndrome. Dr. Hollingsworth recorded the following mental status examination:

> Attractive, moderately overweight Anglo female. . . . She is casually and appropriately dressed. Her psychomotor status appeared without abnormalities. I did not see any difficulty with ambulation and she was able to sit during the interview. Speech was fluent and quite articulate. Hallucinations: None. Delusional thoughts: None. Formal thought disorder: None. Paranoia: None. Her affect is appropriate to the content of thought. Mood is mildly low when she talks about her problems with her back. Memory is excellent in all modalities. She is fully oriented. Her judgment is good. Insight is good. Intelligence is at least in the average range. She is not suicidal not homicidal. No obsessive thoughts. No compulsive behavior and no mania.

(Tr. 179).

Dr. Hollingsworth diagnosed adjustment disorder with depressed mood, indicating that Plaintiff had a GAF of 70.[8]

13.     On March 4, 1997, Plaintiff consulted with Dr. Gutierrez. At that time she complained of a red scaley rash on her hand, which he diagnosed as eczema. He prescribed a topical steroid ointment, Topicort. Dr. Gutierrez also began following for her diabetes[9], adjusting her insulin dosage. (Tr. 201). There are no further notations relating to Plaintiff's hands, although she was seen on two additional occasions by Dr. Gutierrez for routine medical care and follow up of her diabetes. (Tr. 202-203). According to Plaintiff, she obtained a voucher for three visits with Dr. Gutierrez, and was awaiting approval for additional visits. (Tr. 53-54).

---

[8]Global Assessment of Functioning, or GAF, considers "psychological, social and occupational functioning on a hypothetical continuum of mental health-illness. . . (and does not include) impairment in functioning due to physical (or environmental) limitations." A score ranging between 61 and 70 indicates "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. p. 32.

[9]Plaintiff reported that her fasting blood sugar at home measured 250. An office test measured her fasting blood sugar as 361. (Tr. 201).

## IV. Plaintiff's Testimony

14. Plaintiff testified that problems with her low back keep her from working (Tr. 34); Back pain limited standing and sitting to 15 minutes at a time (Tr. 47, 58), walking to one half block (Tr. 47) and lifting to 5 pounds. (Tr. 47); she cannot bend at all (Tr.49) or use her right foot and ankle, which are numb. (Tr. 50). She also stated that problems with her hands prevented her from gripping items like pens, pencils and paint brushes form more than 15-20 minutes at a time. (Tr. 56). No doctor, however had placed any limitations on her activities, advising her to do what she can tolerate. (Tr. 49). During the day she cares for her daughter, who is disabled[10] (Tr. 42). On a typical day she will do housework (Tr. 57). Three days a week she works on craft projects for two hour per day, stopping because of back pain. (Tr. 61). Two to three days per week her back pain is so severe she cannot get out of bed. (Tr. 57). She is able to drive[11] and care for her personal hygiene. (Tr 43). She socializes with her boyfriend and children, going out most evenings.(Tr. 38-39, 42).

## V. Testimony of the Vocational Expert

15. The ALJ posed a hypothetical question to the vocational expert (VE) which contained the following qualifications:

    1. An individual with Plaintiff's age, education, background and experience;

    2. Limited to light work, with the ability to alter occasionally between sit/stand;

    3. Working in a relatively low stress job.

The vocational expert testified that such an individual would be able to perform Plaintiff's past job

---

[10] Plaintiff stated that her daughter was legally blind, and had severe memory difficulties. (Tr. 45).

[11] Plaintiff stated that she drives around town, and had recently driven her daughter to school, a distance of 120 miles. (Tr. 37-38).

7

as a statement clerk, as that job is performed in the national economy. (Tr. 63-64).

16. The VE also testified that such an individual would be able to perform the additional jobs of credit card clerk (sedentary/semi-skilled), mortgage loan computation clerk (sedentary/semi-skilled), cashier II (unskilled), ticket seller (light/unskilled), and ware cleaner (light/unskilled). The jobs of mortgage loan clerk and possibly ticket taker would be eliminated if Plaintiff could not hold a pen or pencil for more than 15 minutes at a time. (Tr. 68). The VE stated that these jobs required frequent, but not repetitive use of the hands (Tr. 65-66). He did not indicate the type of hand use required of a statement clerk.

## VI. The ALJ's Decision

17. The ALJ made the following findings:

    a. Plaintiff had a "severe" impairment or combination of impairments consisting of degenerative joint disease of the sacro-iliac joint and facet syndrome, status post laminectomy, diabetes mellitus with neuropathy and retinopathy, and mild depression, none of which individually or in combination met the criteria for a listed impairment. (Tr. 14).

    b. Plaintiff exaggerated the symptoms and functional limitations produced by her impairments. (15).

    c. Plaintiff retained the residual functional capacity for light work with a sit/stand opinion, further limited to low-stress work that does not require repetitive activities with her hands. (Tr. 15, 17).

    d. Plaintiff has the functional capacity to return to her prior job as a statement clerk, as that job is customarily performed in the national economy. (Tr. 17).

## VII.  Issues and Analysis

### Point 1: Whether Plaintiff Presented Medical Evidence Sufficient to Establish the Criteria for *Per Se* Disability under Listing §§1.05C, 9.08 A, 9.08D or 12.04.

18.  Listed impairments are those "considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R §404.1525(a); §416.925(a). Specific medical findings are required in order to establish the existence of a listed impairment 20 C.F.R. §404.1525(c); §416.925(c). A claimant's description of his or her impairments does not establish a disability under a listing. 20 C.F.R. §404.1525(a); §416.925(a); Bernal v. Bowen, 851 F.2d 279, 300 (10th Cir. 1988). The Plaintiff bears the burden of presenting medical evidence sufficient to establish that he or she is disabled at step three of the sequential evaluation process. Musgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir. 1992). If an individual's medical condition meets or equals a listed impairment, that individual is considered disabled *per se*. However, a claimant must demonstrate all the criteria of a listed impairment in order to qualify as disabled at step three. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). Plaintiff contends that she meets or exceeds the criteria for Listing §§ 1.05C, 9.08A, 9.08D and 12.04.

19.  Listing §1.05C requires a showing of a vertebrogenic disorder, with specific findings persisting for at least three months despite prescribed therapy and expected to last twelve months. Those findings are (1) Pain, muscle spasm and significant limitation of motion of the spine and (2) Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.05C. As noted by the ALJ, Plaintiff's has not demonstrated the requisite muscle weakness, loss of motor function or loss of reflexes required to meet or equal this listing. (Tr. 14; see recitation of medical findings in ¶¶ 5, 6, 7 & 11, above).

20.  Listing §9.08A addresses neurologic abnormalities arising from diabetes melitus, and requires that two extremities demonstrate significant and persistent disorganization of motor function causing disturbance of gross and dextrous movements  or gait and station.[12]  20 C.F.R. Pt. 404, Subpt. P. App. 1 §9.08A.  The medical record clearly establishes that only one of Plaintiff's extremities, her right lower extremity, has demonstrated any neurologic abnormality. (See recitation of medical findings in ¶¶ 5, 6, 7 & 11, above).  Accordingly, her medical condition does not meet or equal the criteria for disability under Listing §9.08A.

21.  Listing §9.08D addresses visual impairment caused by retinitis proliferans, arising from diabetes melitus.  20 C.F.R. Pt. 404, Subpt. P. App. 1, §9.08D.  The condition must result in statutory blindness, as defined in 20 C.F.R. Pt. 404, Subpt. P. App. 1, §2.02, 2.03 or 2.04 before it is considered of listing severity.  The medical record establishes that Plaintiff has background retinopathy (Tr. 135), a condition which does not significantly alter vision, but can lead to processes that can cause blindness. The Merck Manual, 17th Ed., 1999, p. 168.  This is consistent with Plaintiff's testimony, that she sees "okay" with glasses. (Tr. 31-32).  She therefore does not meet the criteria for *per se* disability under Listing §9.08D.

22.  Listing §12.04 addresses affective disorders such as depression.  20 C.F.R. Pt. 404, Subpt. P. App. 1, §12.04.  Plaintiff argues that the ALJ incorrectly determined that she did not qualify for a listed impairment based on depression.  In order to meet the criteria for *per se* disability due to depression under Listing §12.04, a claimant must establish, through medical records, the presence

---

[12] The disturbance of motor function must manifest as paresis or paralysis, tremor or other involuntary movement, ataxia and sensory disturbance occurring singly or in various combination. Further the assessment of impairment depends of the degree of interference with locomotion and or interference with the use of fingers, hands, and arms. 20 C.F.R. Pt. 404, Subpt. P. App. 1, §9.08A, referring to 20 C.F.R. Pt. 404, Subpt. P, App. 1. §11.00C.

10

of depressive syndrome, characterized by at least four of the following:

    a.    Anhedonia, or pervasive loss of interest in almost all activities; or
    b.    Appetite disturbance with change in weight; or
    c.    Sleep disturbance; or
    d.    Psychomotor agitation or retardation; or
    e.    Decreased energy; or
    f.    Feelings of guilt or worthlessness; or
    g.    Difficulty concentrating or thinking; or
    h.    Thoughts of suicide; or
    i.    Hallucinations, delusions, or paranoid thinking.

The ALJ prepared and appended to his decision, a Psychiatric Review Technique Form, in which he found that none of the listed findings were present. (Tr. 18). In his decision, he specifically cited to Dr. Hollingsworth's report, which documented the absence of the findings noted in subparagraphs d, g and h. He referred to Plaintiff's activities, which negate the presence of the findings noted in subparagraphs a and e. (Tr. 16). Plaintiff presented no evidence of appetite disturbance, stating that her appetite was good. (Tr. 47). There is no evidence in the medical record of hallucinations, delusions or paranoid thinking, or of feelings of guilt or worthlessness. Accordingly, Plaintiff did not meet her burden of establishing a impairment under Listing §12.04.

23.    Finally, Plaintiff argues that the combination of her impairments "equals" a listed impairment. (Docket 10, p. 5). However, whether considered individually or collectively, Plaintiff's impairments simply do not present the criteria, the specific medical findings, necessary for a listed impairment.

        **Point 2**    **Whether Substantial Evidence Supports the ALJ's Findings Regarding Plaintiff's Residual Functional Capacity.**

24.    The ALJ found the Plaintiff retained the residual functional capacity for light work with a sit stand option, further limited to low stress work that did not involve repetitive activities with her hands. (Tr. 17). Plaintiff contends that substantial evidence does not support this finding, because

11

the evidence establishes that she has no residual functional capacity. In support of this contention, Plaintiff relies on her own statements regarding functional limitations. (Docket 10, p. 8-9). However, Plaintiff has not challenged the ALJ's determination that she exaggerated the symptoms and functional limitations produced by her impairments.

25.  In arriving at Plaintiff's residual functional capacity, the ALJ cited to medical records documenting her orthopedic problems, and to Dr. Erickson's opinion that she should avoid "heavy" manual labor. (Tr. 15; see ¶ 11, above). The ALJ also considered the Residual Functional Capacity Evaluation performed by agency physicians, as required by Social Security Ruling 96-6P. That evaluation indicated that Plaintiff retained a capacity for light work. (Tr. 16, 190-197). Plaintiff admitted that her treating physicians had placed no limitations on her activities. (Tr. 49). The ALJ cited to Plaintiff's limited use of pain medication (Tr. 16), and to her activities, which included driving, going out with her boyfriend nightly and the ability to do household chores. (Tr. 16). Based on the above, I find that substantial evidence supports the ALJ's findings relating to Plaintiff's residual functional capacity.

          **Point 3**      **Whether the ALJ Erred by Posing an Inaccurate Hypothetical Question to the Vocational Expert.**

26.  Plaintiff contends that the hypothetical posed to the vocational expert was inaccurate because it did not include consideration of Plaintiff's diabetes, back condition and depression. As long as an ALJ's findings about a claimant's physical and mental limitations are reflected in the hypothetical question propounded to the vocational expert, the ALJ can rely on the testimony of a vocational expert in determining that a claimant is disabled. See Decker v. Chater, 86 F.3d 953, 955 (10th Cir.1996) (hypothetical questions to the VE at step five of the sequential evaluation process need only reflect impairments and limitations that are borne out by the evidentiary record); Winfrey v.

12

Chater, 92 F.2d 1017, 1025 (10th Cir. 1996) (ALJ can utilize testimony of vocational expert at step four of the sequential evaluation process).

27. The ALJ decided this case at step four of the sequential evaluation process, finding that Plaintiff could return to her past relevant work as a statement clerk. The hypothetical question posed regarding the demands of that job included limitations caused by Plaintiff's back condition (recognizing that she would need a "sit/stand" option) and mental impairment (recognizing that she was limited to low-stress occupations). There is no evidence that Plaintiff's diabetes, in and of itself, posed any functional limitations on her ability to work. The ALJ did err, however, in failing to include Plaintiff's inability to engage in repetitive hand activities in his hypothetical question. Having found that this limitation existed, the ALJ was required to include it in the hypothetical posed to the vocational expert. The fact that the limitation was included in questions posed at step five does not cure this error, since the ALJ made no findings relevant to a step five determination.

## VIII. Recommended Disposition

28. For the reasons stated above, I recommend that Plaintiff's Motion to Reverse and Remand be granted in part, and that this matter be remanded to the Commissioner with instructions to:

    A. Obtain testimony from a vocational expert regarding the requirements for use of hands in Plaintiff's past relevant work; and

    B. Pose a correct hypothetical question to a vocational expert, which includes Plaintiff's inability to engage in repetitive hand activity.

In the event inclusion of all of Plaintiff's limitations results in a finding that Plaintiff does not have the residual functional capacity to return to her past relevant work, the Commissioner is instructed to make appropriate findings at step five of the sequential evaluation process.

13

_____
Richard L. Puglisi
United States Magistrate Judge

For Plaintiff:    Jeffrey B. Diamond, Esq.
                    Mark S. Sanford, Esq.

For Defendant:   Raymond Hamilton, Esq.
                    Chris Carillo, Esq.